case number 24-28-07, Sisselman v. Zokdok.  Thanks. Mr. Kaiser, whenever you're ready. May it please the Court, my name is Jeffrey Kaiser and I represent the relator, Dr. Steven Sisselman, on this appeal as I did below. The defendant, Zokdok, has offered a false narrative that is built on a false premise, which is that its booking fee was approved not once but twice by the Office of Inspector General, making the relator's FCA allegations and any notion that Zokdok could have acted with the requisites to enter, implausible. But as I say, that is a false premise because the OIG never approved Zokdok's actual booking fee once, much less twice. OIG was told that that booking fee was not based on and did not account for referral value. The Second Amendment complaint tells a different story and includes detailed factual allegations including party admissions, consisting of recordings, conversations, e-mails, business records, showing that Zokdok's booking fee was very much based on referral value. That it was not only calculated based on referral value, but that it was marketed and promoted What do you mean by referral value? Yes, Judge Chin. What I mean is that the booking fee was calculated based on the reimbursement value of the patient referral being sent by Zokdok to the provider over the course of 12 months. That value was computed for different medical specialties. So, for example, the reimbursement value for a pediatrician over the course of 12 months might be X. The reimbursement value for a dentist might be Y. The reimbursement value for another specialty. What's wrong with having different amounts for different specialties? The basic was $35 for a general practitioner? Correct. And then I think that went up to $37. So, what is wrong with there being different amounts according to the specializations? What is wrong with that, Your Honor, is that the anti-kickback statute makes unlawful the payment or solicitation of any payment for the unlawful purpose of inducing or rewarding a referral. If you are soliciting payments from providers for referrals based on what those referrals are worth, that is the essence of a kickback violation. That is the very reason that Hawaii... So, it's unlawful unless approved in an advisory opinion. I'm glad that you raised the advisory opinion. So, there were two advisory opinions issued. So, the plaintiff has to show that, the relator has to show that there was some misrepresentation or omission made to the OIG? Yes, I can address that. What are the misrepresentations? The misrepresentation, Your Honor, is a specific certification made twice in 2019 and then again before issuance of the second advisory opinion in July of 2023 that the booking fee did not take into account the value of the referral. That was an explicit statement and certification made to OIG on both occasions and as alleged in the Second Amendment complaint, as I was just discussing, that was not true. It was very much based on referral value. And OIG, in those advisory opinions, made very clear that it did not do any independent investigation of the facts. It was entirely reliant on Zot Doc's representation of those facts. Did Zot Doc, in getting these opinions, mention the various different charges for different providers? Yes, Your Honor. That was disclosed, right? As you've described it here. The same things that you've described here, that were the referral values, were disclosed. No, Your Honor. I mean, with all respect. The payments were disclosed. With respect, Your Honor, what was disclosed is that one of the factors that went into how much was being charged for the booking fee was the medical specialty. Yes, that was disclosed. But that fee could vary based on medical specialty for market reasons independent of referral value. They're not the same thing. But the impression I got was that these fees did vary. They varied depending on the circumstances. They varied based on geography and medical specialty. But nowhere was there a disclosure that it varied based on referral value. And nor would it make any sense, Your Honor, because... It's based on the specialty. And you said that was what the referral value was. The difference in the referral values had to do with the specialties. Those are different concepts. In other words, you could vary a fee based on medical specialty, for example, based on an underrepresentation of one medical specialty in a particular market, based on the demand of another specialty in another market. There are other reasons why a fee could vary based on medical specialty. But what OIG made clear in both advisory opinions is that one of those reasons could not be referral value because referral value had been certified not to be part of the calculation. And so when OIG is stating specifically in its advisory opinions that the requester, in this case, Zaktok, has certified that the fee is not based on referral value, whatever reason that medical specialty variance... I'm still unclear as to what you mean by referral value. One would think that it might be that there would be a higher fee for a certain kind of provider who's maybe better at the job, and that would be the referral value. I don't understand what... But the distinction you've drawn is not that. The distinction that you've drawn is the medical specialty, not the quality of the service. No, the distinction that the relator has drawn in the complaint, Your Honor, is that the referral fee was specifically based on Zaktok's research of how much reimbursement that medical specialty would get for the patient over the course of 12 months. So that's how referral value has been described and alleged by the relator. That would vary by specialty, right? It would vary by specialty. It would vary by specialty. But Zaktok never disclosed... That was known to the OIG, that there was a variable. That was one of the variables. No, Your Honor. With all due respect, OIG had no idea that the fee varied based on referral value, meaning reimbursement value. It only knew that it varied based on medical specialty. And it wasn't up to OIG to divine the lawful purpose that Zaktok could have had for varying a fee based on medical specialties because it had been told it was not referral value. So that means your theory is that Zaktok intentionally withheld information from OIG in order to get an opinion that it would then use to hide behind to administer this scheme. And that's your way around this answer? Is that right? The answer is yes to the first part of your question, Your Honor. But I wouldn't necessarily agree that it's a way around the answer. So what's your evidence that there was withholding of information? Okay, so the evidence of concealment that we allege includes the fact that on two occasions it falsely represented what its actual booking fee was based on, that it was based on referral value. It also includes the fact... I mean, I guess this goes to the same call that we've been having with Judge Walker, that there's a bunch of factors that go into the fee, including specialty and geography, and those things were all disclosed and calculated. But not referral value. And referral value is the essence of a kickback violation. You can't be soliciting or paying money for referrals based on what they're worth. And that's why OIG was so careful, and before issuing the second advisory opinion, asked them to certify that it was not based on referral value. And so when we get to, when we talk about... Where in the opinion does it say that, the second opinion? It states it, I believe, in at least two places, but on the last page, I think it's on the last page, or the second to last page, when it goes through the factors, it talks about the fact that Zot Doc has represented that it is not based, that the booking fee is not based on the volume or value of referrals. I don't remember the exact page. But to your point, Judge Park, when we're talking about C-Enter, the second amendment complaint alleges that they knew they were bound by the anti-kickback statute, they knew that they could not charge based on referral value. They were told twice they couldn't, actually, by OIG. And the fact that they did so anyway is the evidence of concealment that we've alleged that preceded the litigation that happened contemporaneous with the violations, unlike the fact pattern in the McKesson case. Thank you, counsel. Good morning, and may it please the Court, my name is Edward Discan, I represent Zot Doc, and I represented Zot Doc below, as I think your Honor's questions picked up on the fundamental problem with the complaint, the second amended complaint, is the problem Judge Tastell correctly identified in dismissing it, which is that close examination of it and the two advisory opinions makes clear that the complaint does little more than apply conclusory labels to the exact practices that OIG approved, not once, but twice. With respect to the manner in which the fees themselves are calculated, Judge Chin, I would point you to A-147, which is the page of the appendix, which includes the representation in question. A-124 is the representation in the first advisory opinion. And as the advisory opinion makes clear, OIG understood that there were going to be a number of different factors that would go into the manner in which those fees were calculated. The fees would be marketing fees, they would be for an advertising service. It is very clear from the face of both advisory opinions that OIG fully understood that. The fees would not reflect simply the cost of operating the service, that is, they would be offering something of value to the providers in the form of marketing, and that would be encompassed in fair market value. They would vary by geography, they would vary by specialty, they would be preset. And the language is clear, they would not vary directly based on the volume or value of the federal health care program business generated by the marketplace. None of that is inconsistent with the allegations in the second amended complaint. The representation is the language on A-147 that the per-booking fees would not exceed fair market value, is that? Correct, Your Honor. If you continue through, there's an entire paragraph beginning with first underlined that lays out OIG's understanding of the manner in which the fees would be calculated, starting with the fact that they would vary by medical specialty, geographic locations, and in certain circumstances other relevant factors affecting the market value. So the referral fee is, I'm still having a little trouble understanding what is meant by referral value. So it's the fair market value of the services providing the referrals? So part of the problem, Your Honor, is that referral fee is really a later assert. He's applying a label to the facts. But the fee itself that is being charged, that OIG understood is charged, could not exceed fair market value for the service ZocDoc was providing, which is a marketing service. The OIG says that, in essence, this is at least arguably a referral because it does implicate the statute. But it then goes on to say we believe the risk of fraud and abuse is low, and therefore it's okay. In other words, even assuming it is a referral fee is what I'm understanding, we don't think it's a problem because it doesn't really implicate the concerns behind the anti-kickback statute. That's exactly right, Your Honor. And to follow up on that, OIG then goes on to articulate an entire series of reasons why it doesn't believe or it believes, rather, that the risk of fraud and abuse is low here. The overwhelming majority of which are not remotely impacted by the allegations in the complaint. You know, for example, OIG specifically finds, notwithstanding the quote-unquote referral label, that the likelihood that ZocDoc is going to cause a particular patient to seek out a particular medical service is exceedingly low. ZocDoc is passive in nature. Patients who come to ZocDoc have already decided they want a doctor's appointment. It's not touting any particular doctor over another doctor, I gather. Not only is it not, Your Honor, but OIG made the opposite finding in 1904. That is, the ZocDoc service is unlikely to lead a particular patient to seek out a particular provider, let alone a particular medical service, because there are so many factors that go into that decision that ZocDoc has nothing to do with. A referral fee is you're recommending someone because you're getting paid. You're recommending a particular doctor because you're getting paid. But ZocDoc doesn't care who is being chosen as long as it's among – well, there's an issue of when someone hits a cap. Correct. Then they are taken off the system. Is that arguably then become a referral system because they're not referring to those doctors who have hit the cap? So, no, Your Honor, for two reasons. The first is OIG, of course, approved of the spend cap feature in 2304. But the second and more fundamentally is that ZocDoc has always been available only to those providers who pay to use the service. That is, ZocDoc has never suggested to the public or to OIG that it is going to include every medical provider under the sun. It's only available to providers who pay to be included. The spend cap is just a logical extension of that concept. That is, providers have the opportunity to say I only want to be included up to X number of new appointments this month, then I'd like to stop paying to participate until the beginning of next month, which is presumably why OIG had no problem with the ZocDoc – excuse me, with the spend cap and approved it as part of A02304. The other quick point I want to highlight is the center point, which did not come up. Even assuming that Relator was able to identify some sort of meaningful daylight between what OIG understood and approved of not once but twice and what ZocDoc was doing, there are no credible, no plausible allegations in the second amended complaint that would meet the heightened standard applicable under 9b and with respect to the AKS in particular, as this court made clear recently in McKesson, the required showing of an intent to violate the law. On the contrary, as Judge Castell correctly found, the facts alleged on the face of the complaint lead to the opposite inference. That is, ZocDoc identified as early as 2016 that a per-booking fee model might raise concerns under the AKS, and so rather than offer that model, they went to the government. They went to OIG and sought permission. They worked with OIG to obtain an advisory opinion. They got that advisory opinion, and only then did they launch the per-booking fee model that Relator complains of. And more important, when Relator raised the concerns that he has and raised them with OIG, ZocDoc worked with OIG again to seek permission and get permission again from OIG. On those facts, there is simply no plausible inference that can be drawn that ZocDoc was acting with an intent to violate the law. Quite the contrary. With that said, unless the panel has further questions, I'm happy to rest on leaving. Thank you, Counsel. Thank you, Your Honor. I'll hear with Bob. Thank you, Your Honor. A couple of things. First, with respect to all the other considerations that OIG looked at in these advisory opinions, it couldn't even get to those without first dispensing with the first factor in both opinions, which is that, again, the fee ostensibly was not based on referral value, did not take into account referral value, because that is at the heart of the anti-kickback statute, and that was not true. And it's hard to imagine how OIG could be seen to have approved or protected a booking fee that was based on referral value, as alleged in the second amendment complaint and as ZocDoc employees acknowledged. It's hard to see how OIG could have approved that when it specifically based its opinions on the fact and representation that it was not based on referral value. So with respect to CENTER, as I stated earlier, the misrepresentation of the booking fee repeatedly to OIG, without disclosing it as well to the public, was the evidence of CENTER in this case, along with the misleading of patients about appointment availability and the dropping of providers who did not pay these fees from search results. That's why there was a second advisory opinion. They received the allegations of the relator and required ZocDoc to make certain changes, but had to rely on their representation on the booking fee. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.